IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| **TARIK HASAN HUDGINS,** | ) | |
| Plaintiff, | ) | **Case No. 7:22-cv-00170** |
| | ) | |
| **v.** | ) | |
| | ) | **By: Michael F. Urbanski** |
| **DR. BENNY MULLINS, MD, et al.,** | ) | **Chief United States District Judge** |
| Defendants. | ) | |

## MEMORANDUM OPINION

Tarik Hasan Hudgins, a Virginia inmate proceeding pro se, filed this civil action under 42 U.S.C. § 1983 against three members of the medical staff at Wallens Ridge State Prison: Dr. Benny Mullins, MD; Robin Smith, RN; and Tiffani Stanley, LPN. Hudgins claims that the defendants violated his Eighth Amendment right to adequate medical care. The case is presently before the court on (1) the defendants' motion for summary judgment under Federal Rule of Civil Procedure 56(a), ECF No. 52; (2) the defendants' motion for a protective order staying discovery pending the resolution of the issue of qualified immunity raised in their motion for summary judgment, ECF No. 54; and (3) Hudgins's motion for relief under Rule 56(d), ECF No. 68. For the reasons set forth below, the defendants' motion for summary judgment is **GRANTED IN PART AND DENIED IN PART**; Hudgins's motion for relief under Rule 56(d) is **GRANTED IN PART AND DENIED IN PART**; and the defendants' motion for a protective order is **DENIED WITHOUT PREJUDICE** as moot.

## Procedural History

The court begins by summarizing the relevant aspects of the procedural history. Hudgins initially filed this action against Dr. Mullins, Nurse Smith, Nurse Stanley, the Virginia

Department of Corrections ("VDOC"), Officer Howes, and S. Stallard on March 24, 2022. ECF No. 1. On June 1, 2022, Hudgins filed an amended complaint as a matter of course pursuant to Federal Rule of Civil Procedure 15(a)(1), which removed the VDOC and Howes as defendants and revised his claims against the remaining defendants. ECF No. 24. With respect to the medical defendants, Hudgins alleged that they provided inadequate treatment for two unrelated medical conditions: an injury to his left forearm and fluid on his knees. Id. In response, the medical defendants filed a motion for summary judgment in which they asserted the defense of qualified immunity. ECF Nos. 34 and 35.

On October 12, 2022, Hudgins moved for leave to file a second amended complaint. ECF No. 46. The motion was accompanied by a proposed second amended complaint that removed Stallard as a defendant and attempted to clarify Hudgins's particular claims against the remaining medical defendants. On November 2, 2022, the motion was granted, and the second amended complaint became the operative pleading in the case. ECF No. 49.

On December 21, 2022, Dr. Mullins, Nurse Smith, and Nurse Stanley filed a motion for summary judgment on the second amended complaint, in which they once again argue that they are entitled to qualified immunity. ECF No. 52; see also ECF No. 53 at 3. In support of the motion, the defendants filed a declaration executed by Dr. Mullins and other exhibits. The defendants simultaneously moved for a protective order staying discovery pending a decision on their motion for summary judgment. ECF No. 54. The defendants argue that "they should not be required to undergo the costs and expense of discovery until [the issue of qualified immunity] is resolved." ECF No. 55 at 3. At the time the motion was filed, Hudgins had

propounded interrogatories, requests for admission, and requests for production of documents. See ECF Nos. 38, 39, and 40.

Hudgins filed responses in opposition to the defendants' motion for summary judgment and their motion for a protective order.[1] ECF Nos. 59 and 60. He also filed a motion for relief under Rule 56(d). ECF No. 68. In that motion, Hudgins argues that the defendants' motion for summary judgment is premature and that the court should deny the motion and permit him to engage in discovery.

## Standards of Review

The defendants' motion for summary judgment is filed pursuant to Federal Rule of Civil Procedure Rule 56(a). This rule provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A plaintiff's opposition to summary judgment based on the need for discovery is governed by Rule 56(d). This rule provides that if "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition [to summary judgment], the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d).

As a general rule, summary judgment is appropriate only "after adequate time for discovery." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 n.5 (1986) (noting that summary judgment should "be refused

---

[1] In addition to his initial response to the defendants' motion for summary judgment, Hudgins filed a surreply, ECF No. 67, followed by a motion for leave to file the surreply, ECF No. 71. That motion will be granted.

where the nonmoving party has not had the opportunity to discover information that is essential to his opposition"). An exception to this rule sometimes applies in cases in which the defense of qualified immunity is invoked. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). The Supreme Court has explained that "the defense is meant to give government officials a right, not merely to avoid standing trial, but also to avoid the burdens of such pretrial matters as discovery," since "inquiries of this kind can be peculiarly disruptive of effective government." Behrens v. Pelletier, 516 U.S. 299, 308 (1996) (internal quotation marks and emphasis omitted) (quoting Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)).

Although discovery involving public officials is "one of the evils that Harlow aimed to address, . . . neither that opinion nor subsequent decisions create an immunity from all discovery." Crawford-El v. Britton, 523 U.S. 574, 593 n.4 (1998). Instead, "Harlow sought to protect officials from the costs of 'broad-reaching' discovery," id. (quoting Harlow, 457 U.S. at 818), and the Supreme Court has "since recognized that limited discovery may sometimes be necessary before the district court can resolve a motion for summary judgment based on qualified immunity," id. (citing Anderson v. Creighton, 483 U.S. 635, 646 n.6 (1987); Mitchell, 472 U.S. at 526). In Crawford-El, the Supreme Court provided further guidance on the issue of discovery in the context of qualified immunity, explaining as follows:

> [I]f the defendant does plead the immunity defense, the district court should resolve the threshold question before permitting discovery. To do so, the court must determine whether, assuming the truth of the plaintiff's allegations, the official's conduct

> violated clearly established law . . . . If the plaintiff's action
> survives these initial hurdles and is otherwise viable, the plaintiff
> ordinarily will be entitled to some discovery.

Id. at 598; see also Smith v. Fla. Dep't of Corr., 713 F.3d 1059, 1064 (11th Cir. 2013) (concluding that an inmate was "entitled to some discovery" since he "sufficiently stated a plausible cause of action") (citing Crawford-El, 523 U.S. at 598). Thus, in accordance with the Supreme Court's guidance, the court will focus its analysis on whether Hudgins's "allegations state a claim of violation of clearly established law." Mitchell, 472 U.S. at 526 (emphasis added).

## Discussion

### I.   Hudgins's Allegations

According to the second amended complaint, Hudgins was incarcerated at Wallens Ridge State Prison ("Wallens Ridge") from at least 2021 until on about March 1, 2022. During that time period, Dr. Mullins was the doctor at Wallens Ridge, Robin Smith was employed as registered nurse at the prison, and Tiffani Stanley worked as a licensed practical nurse. 2d Am. Compl, ECF No. 48, ¶¶ 3–5.

On December 2, 2021, Hudgins saw Dr. Mullins for complaints of pain, swelling, and fluid in both knees. Id. ¶ 7. "Dr. Mullins ordered x-rays for both knees, blood work to check for an infection, knee sleeves, and generic Motrin for pain." Id. ¶ 8.

Later that same day, a large stack of boxes fell on Hudgins's left arm while he was working in the kitchen. Hudgins alleges that he experienced "excruciating pain" after the boxes hit his arm and that a "large knot" appeared "almost immediately." Id. ¶ 9.

On December 3, 2021, Hudgins showed his arm to Nurse Stanley, "the LPN conducting pill call." Id. ¶ 10. After examining his arm, Stanley declined to sign an emergency grievance, and she did not provide or request any form of immediate medical treatment. Id. ¶ 11. Following a shift change later that day, Hudgins showed his arm to correctional officers who had just arrived to work, and the officers sent Hudgins to the medical department to be evaluated further. Id. ¶¶ 12–13.

Nurse Smith was on duty at the time Hudgins arrived in the medical department, and she evaluated Hudgins's arm and checked his vital signs. Id. ¶¶ 14–15. Hudgins alleges that his initial blood pressure reading was 178 over 115, and that "Nurse Smith exclaimed that the reading couldn't be correct due to its high nature." Id. ¶ 16. When Nurse Smith tested Hudgins's blood pressure again, she obtained a reading of 168 over 100. Id. ¶ 17. After she purportedly contacted Dr. Mullins, Nurse Smith gave Hudgins Motrin and ordered an x-ray of his arm. Id. ¶ 18. Hudgins alleges that "[t]he pain was not alleviated from taking the Motrin" and that he submitted a sick call request complaining that the medication did "not help for the pain and suffering." Id. ¶¶ 19–20.

The arm x-ray was performed on December 4, 2021, and Dr. Mullins acknowledged reviewing the x-ray report on December 6, 2021. According to Hudgins, the x-ray "showed a 1.5 cm corticated ossific fragment at the posterior olecranon and mild soft tissue swelling at the posterior elbow." Id. ¶ 22. The report indicated that "[t]he ossific fragment likely represented a chronic fracture of the posterior olecranon" but that "[a] subacute fracture could not be completely excluded." Id. Dr. Mullins noted that the x-ray results would "require further testing/monitoring." Id. ¶ 21.

On December 9, 2021, Hudgins underwent x-rays of both knees, and Dr. Mullins acknowledged having read the x-ray reports on December 13, 2021. Id. ¶ 23. "The x-ray report on [Hudgins's] right knee showed mild tricompartmental osteoarthritic change that would require further testing and monitoring." Id. ¶ 26.

Hudgins saw Dr. Mullins for a follow-up appointment on December 15, 2021, at which time his blood pressure had lowered to 154 over 90. Hudgins alleges that Dr. Mullins ordered knee sleeves again and recommended that Hudgins receive "bottom tier and bottom bunk status." Id. ¶ 27. He also determined that Hudgins should be referred to an orthopedic specialist "for both his arm and knee." Id. ¶ 28. However, the required referral request "was never prepared." Id.

Following the examination, Hudgins continued to experience "extreme pain" in his right knee and left arm. Id. ¶ 31. On January 6, 2022, Hudgins submitted a sick call request complaining that "the Motrin was not reducing the pain." Id. ¶ 32. Eight days later, he received the knee sleeves ordered by Dr. Mullins. Id. ¶ 33.

Hudgins saw Dr. Mullins again on January 18, 2022, regarding the "hypertension issue." Id. ¶ 34. During the examination, Hudgins also complained of "continued leg pain." Id. Despite his complaints, Dr. Mullins "revoked the bottom tier recommendation." Id. ¶ 35.

On January 20, 2022, Hudgins saw Dr. Mullins regarding the ongoing pain in his left arm. He alleges that Dr. Mullins prescribed Motrin again "despite current and prior repeated complaints of its ineffectiveness at treating the severe pain." Id. ¶ 36.

Hudgins returned to Dr. Mullins on February 28, 2022, with complaints of pain in his left arm. Hudgins alleges that Dr. Mullins renewed the Motrin prescription for another 90

days, despite his "repeated" complaints that the medication was "ineffective[] at treating the severe pain." Id. ¶ 39. Hudgins further alleges that Dr. Mullins "never made the effort to see why [he] had not been sent to the orthopedic specialist." Id. ¶ 40.

On or about March 1, 2022, Hudgins was transferred to Keen Mountain Correctional Center ("Keen Mountain") and out of the care of Dr. Mullins. Id. ¶ 42. Medical staff at Keen Mountain referred Hudgins to an orthopedic specialist who examined Hudgins in April and May 2022. Id. ¶ 44. On August 15, 2022, Hudgins underwent an MRI on his right knee, which revealed a medial meniscus tear. Id. ¶ 45. Hudgins alleges that he "suffered extreme and unnecessary pain for months" as result of not receiving adequate medical treatment at Wallens Ridge and that he now has a "permanent knot" on his arm. Id. ¶ 46.

Based on the foregoing allegations, Hudgins seeks to recover damages under 42 U.S.C. § 1983 for alleged violations of the Eighth Amendment. He asserts the following claims against the defendants:

> Claim I: Nurse Stanley violated the Eighth Amendment by failing to provide or obtain medical treatment when Hudgins showed her his arm on December 3, 2021.
>
> Claim II: Nurse Smith violated the Eighth Amendment by failing to "treat [Hudgins's] high blood pressure and extreme pain with more than a single Motrin" when she examined him on December 3, 2021.
>
> Claim III: Dr. Mullins violated the Eighth Amendment by failing to treat Hudgins's knee issues "without more than Motrin and knee sleeves" and by failing to "ensure he was seen by a specialist who could treat him."
>
> Claim IV: Dr. Mullins violated the Eighth Amendment by only prescribing Motrin to treat Hudgins's arm pain.

Id. ¶¶ 49–52.

## II.      Legal Framework

Hudgins's claims against the defendants are brought pursuant to 42 U.S.C. § 1983. Section 1983 provides a cause of action against any person who, under color of state law, deprives another person "of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. "However, the doctrine of qualified immunity shields government officials 'from liability for civil damages' for the deprivation of federal rights so long as 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Tarashuk v. Givens, 53 F.4th 154, 162 (4th Cir. 2022) (quoting Harlow, 457 U.S. at 818).

Resolving the question of qualified immunity at this stage of the proceedings, when the plaintiff has not had the benefit of discovery, involves a two-prong inquiry: (1) whether the plaintiff's allegations, accepted as true, make out a violation of a federal right; and (2) whether such right was clearly established at the time of the alleged violation. See Turner v. Thomas, 930 F.3d 640, 644 (4th Cir. 2019) (citing Pearson, 555 U.S. at 226); see also Crawford-El, 523 U.S. at 598 (explaining that "the court must determine whether, assuming the truth of the plaintiff's allegations, the official's conduct violated clearly established law").

The source of the right at issue in this case is the Eighth Amendment, which prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. "Under the Eighth Amendment, prisoners have the right to receive adequate medical care while incarcerated." DePaola v. Clarke, 884 F.3d 481, 486 (4th Cir. 2018) (citing Scinto v. Stansberry,

841 F.3d 219, 236 (4th Cir. 2016)). A constitutional violation occurs "[w]hen a prison official demonstrates 'deliberate indifference' to an inmate's serious medical needs." Id.

An Eighth Amendment claim of deliberate indifference has both an objective and subjective component. Jackson v. Lightsey, 775 F.3d 170, 178 (4th Cir. 2014). The objective component is satisfied by a "serious medical condition." Gordon v. Schilling, 937 F.3d 348, 356 (4th Cir. 2019). "A medical condition is objectively serious when it either is 'diagnosed by a physician as mandating treatment' or is 'so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" Mays v. Sprinkle, 992 F.3d 295, 300 (4th Cir. 2021) (quoting Scinto, 841 F.3d at 225).

The subjective component requires factual allegations sufficient to show that a defendant acted with a "sufficiently culpable state of mind," specifically, "deliberate indifference." Id. (internal quotation marks and citations omitted). "An official is deliberately indifferent to an inmate's serious medical needs only when he or she subjectively 'knows of and disregards an excessive risk to inmate health or safety.'" Jackson, 775 F.3d at 178 (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)). This standard is "exacting," and it requires more than "mere negligence or even civil recklessness." Id. To rise to the level of an Eighth Amendment violation, "it is not enough that an official should have known of a risk." Id. Rather, the official "must have had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." Id. In other words, "actual knowledge of the risk of harm to the inmate is required," and "the [official] must also have recognized that his actions were insufficient to mitigate the risk of harm to the

10

inmate arising from his medical needs." Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008) (internal quotation marks and citation omitted).

If a plaintiff's factual allegations satisfy both components of an Eighth Amendment claim, the court must consider the second prong of the qualified immunity analysis. Pfaller v. Amonette, 55 F.4th 436, 445 (4th Cir. 2022). Under the second prong, "an official is nonetheless entitled to qualified immunity if the right was not so clearly established that a reasonable official would understand that what he is doing violates that right." Id. (internal quotation marks and citations omitted). The Fourth Circuit has explained that "the lodestar for whether a right was clearly established is whether the law 'gave the officials fair warning that their conduct was unconstitutional.'" Iko, 535 F.3d at 238 (quoting Ridpath v. Bd. of Governors Marshall Univ., 447 F.3d 292, 313 (4th Cir. 2006)).

It is against this backdrop that the court considers the claims asserted by Hudgins and the defendants' assertion of qualified immunity.

### III.    Substantive Analysis

#### A.    Nurse Stanley

Hudgins claims that Nurse Stanley violated the Eighth Amendment by failing to provide or obtain immediate medical treatment for his left arm. The court concludes under the first step of the qualified immunity analysis that Hudgins has failed to state a claim against this defendant.

As previously summarized, Hudgins alleges that a "large knot" formed on his arm after boxes fell on it and that he "showed the injury" to Nurse Stanley during pill call the next day. 2d Am. Compl. ¶¶ 9–10. The defendants correctly point out that courts have found similar

11

allegations insufficient to satisfy the objective component of a claim of deliberate indifference. See, e.g., Ford v. Kelley, No. 21-3140, 2022 WL 588070, at *1 (8th Cir. Feb. 28, 2022) (agreeing with the district court that the injuries that the defendants "allegedly failed to examine or treat—Ford's inner lip laceration and a knot on the back of his head, without other symptoms—were not objectively serious medical needs"); Stewart v. Rush, No. 2:21-cv-00101, 2022 WL 456771, at *6 (W.D. Mich. Feb. 15, 2022) (emphasizing that "merely stating that [the nurse] saw Plaintiff's bruised and swollen arm does not suffice to show that he was suffering a sufficiently serious medical need"); Adams v. Compton, No. 7:04-cv-00258, 2005 WL 2006975, at *10 (W.D. Va. Aug. 17, 2005) (concluding that allegations of "various bruises, abrasions, and a knot on [the plaintiff's] head" did not qualify as "sufficiently serious" under existing precedent).

Nonetheless, even if the court assumes that Hudgins's arm injury was sufficiently serious to meet the objective prong, the operative pleading fails to plausibly allege that Nurse Stanley "had actual subjective knowledge of both the . . . serious medical condition and the excessive risk posed" by not providing or obtaining medical attention at the moment Hudgins requested it. Jackson, 775 F.3d at 178 (emphasis added). In other words, the factual allegations do not allow the court to reasonably infer that Nurse Stanley actually understood from the circumstances presented that "immediate intervention was required to avoid a substantial risk of harm." Moss v. Harwood, 19 F.4th 614, 624 (4th Cir. 2021). As the Fourth Circuit recently observed, "medical care is often not immediate," and "actual treatment may not follow immediately upon medical attention, whether due to the caution of a prudent physician or the inevitable uncertainties of diagnosis." Moskos v. Hardee, 24 F.4th 289, 297–98 (4th Cir. 2022).

Consequently, "[i]t would be wrong to turn the everyday inconveniences and frictions associated with seeking medical care into constitutional violations whenever they occur within the prison walls." Id. at 298.

The allegations against Nurse Stanley do not allow the court to reasonably infer that she "subjectively knew of and disregarded an excessive risk to [Hudgins's] health or safety." Hixson v. Moran, 1 F.4th 297, 302 (4th Cir. 2021) (citing Jackson, 775 F.3d at 178). At most, the allegations suggest that Nurse Stanley negligently failed to deduce that the knot on Hudgins's arm could be a sign of a more serious problem, and mere negligence does not rise to the level of a constitutional violation. Jackson, 775 F.3d at 178; see also Johnson v. Doughty, 433 F.3d 1001, 1013 (7th Cir. 2006) (emphasizing that "medical malpractice, negligence, or even gross negligence does not equate to deliberate indifference"); Grethen v. Clarke, No. 2:13-cv-00416, 2015 WL 3452020, at *10 (E.D. Va. Mar. 13, 2015) (concluding that the nurse's alleged failure to appreciate the severity of an inmate's wrist injury "would, at most, indicate negligence, not deliberate indifference").

For these reasons, the court concludes that the allegations in the second amended complaint fail to state a viable constitutional claim against Nurse Stanley. Accordingly, Nurse Stanley is entitled to quality immunity under the first prong of the qualified immunity analysis, and the defendants' motion for summary judgment will be granted as to the claim against her. See Massey v. Ojaniit, 759 F.3d 343, 354 (4th Cir. 2014) (noting that qualified immunity applies under the first step of the analysis when a plaintiff fails to a state a claim on which relief can be granted, rendering it unnecessary to proceed to the second step).

B.     Nurse Smith

The court reaches the same decision with respect to Nurse Smith. Hudgins alleges that Nurse Smith tested his blood pressure twice after he arrived in the medical unit on December 3, 2021; that his second blood pressure reading was 168/100; and that "[a]fter supposedly contacting Dr. Benny Mullins, Nurse Smith put in an order for an [arm] x-ray . . . and gave him a generic Motrin for pain." 2d Am. Compl. ¶¶ 16–18. Hudgins claims that Nurse Smith violated the Eighth Amendment by failing "to treat [his] high blood pressure and extreme pain with [no] more than a single Motrin." Id. ¶ 49.

Hudgins's allegations fail to state an Eighth Amendment claim against Nurse Smith for several reasons. First, "[w]hile high blood pressure can certainly constitute a serious medical need," Raybon v. Williamson, No. 5:21-cv-00169, 2022 WL 16579813, at *3 (W.D.N.C. Nov. 1, 2022), Hudgins does not allege facts from which the court can reasonably infer that Nurse Smith acted with deliberate indifference to that need. Hudgins seemingly acknowledges that Nurse Smith contacted Dr. Mullins after examining him, and the second amended complaint is devoid of any additional facts suggesting that the elevated blood pressure readings on that single occasion "indicated the existence of an emergency requiring immediate additional treatment by the . . . nurse." Id. Moreover, Hudgins provides no indication as to what additional treatment should have been provided on that occasion, and any "disagreement with [the nurse's failure] to immediately dispense blood pressure medication is insufficient to state an Eighth Amendment claim." Id. (citing Scinto, 841 F.3d at 225).

For similar reasons, Hudgins fails to plausibly allege that Nurse Smith acted with deliberate indifference to his complaints of arm pain. Hudgins acknowledges that she "gave

him a generic Motrin for pain" and that she "put in an order for an x-ray." 2d Am. Compl. ¶ 18. There are no factual allegations indicating that Nurse Smith, as a registered nurse, could have taken any other actions at that point, much less that she "recognized that [her] actions were insufficient to mitigate the risk of harm to [Hudgins] arising from his medical needs." Iko, 535 F.3d at 241 (internal quotation marks and citation omitted). To the extent Hudgins disagrees with the decision to initially provide Motrin for pain, the Fourth Circuit "consistently [has] found such disagreements to fall short of showing deliberate indifference." Jackson, 775 F.3d at 178; see also Sanford v. Tarrant Cnty. Sheriff's Dep't, 628 F. App'x 301, 302 (5th Cir. 2016) ("At most, Sanford's complaint that he received only ibuprofen for pain amounts to a mere disagreement with medical treatment, which does not constitute a constitutional violation.")

Accordingly, the court concludes that the second amended complaint fails to state a viable Eighth Amendment claim against Nurse Smith. Thus, Nurse Smith is also entitled to qualified immunity under the first prong of the qualified immunity analysis, and the defendant's motion for summary judgment will be granted with respect to the claim against her.

## C.    Dr. Mullins

Hudgins claims that Dr. Mullins acted with deliberate indifference to his serious medical needs by continuing to only prescribe Motrin "despite current and prior complaints, repeated, of its ineffectiveness at treating the severe pain" in his arm and knee. 2d Am. Compl. ¶¶ 39, 50–51. Hudgins also claims that Dr. Mullins acted with deliberate indifference by failing to ensure that he was seen by an orthopedic specialist after Dr. Mullins determined that an

15

orthopedic referral was clinically necessary. Id. ¶¶ 28, 51. He alleges that he did not see an orthopedic specialist until after he was transferred out of Dr. Mullins's care and that he "suffered extreme and unnecessary pain for months." Id. ¶ 47.

Assuming the truth of Hudgins's allegations, the court concludes that Hudgins has stated a cognizable claim of deliberate indifference against Dr. Mullins. With respect to the objective component, Hudgins has sufficiently alleged that his medical needs were sufficiently serious during the time period in which he was under Dr. Mullins's care. See Lowery v. Bennett, 492 F. App'x 405, 411 (4th Cir. 2012) (holding that a plaintiff "must show that the medical need was serious when he was examined by [the defendant]"). Hudgins alleges that the x-rays of his left arm and right knee revealed problems that required further monitoring and testing; that Dr. Mullins prescribed treatment in the form of knee sleeves, bottom bunk status, and Motrin; that Dr. Mullins also determined that a referral to an orthopedic specialist was necessary "for both his arm and knee"; and that he experienced "extreme" pain for months because the Motrin prescribed by Dr. Mullins did not alleviate his pain. 2d Am. Compl. ¶¶ 28, 47. These allegations are sufficient to satisfy the objective component at this stage of the proceedings. See Scinto, 841 F.3d at 225 (explaining that a medical condition is objectively serious when it is "diagnosed by a physician as mandating treatment"); see also Melton v. Abston, 841 F.3d 1207, 1222 (11th Cir. 2016) (noting that severe pain that is not adequately treated "can also constitute a serious medical need depending on the circumstances").

The court also concludes that Hudgins has alleged facts sufficient to show that Dr. Mullins acted with deliberate indifference to his medical needs. Although Dr. Mullins

prescribed Motrin for pain on at least three occasions over a three-month period, "that alone does not foreclose [Hudgins's] claims" against the doctor. Perry v. Meade, 728 F. App'x 180, 182 (4th Cir. 2018) (citing De'Lonta v. Johnson, 708 F.3d 520, 526 (4th Cir. 2013) (holding that, even if defendants "provided [plaintiff] with some treatment . . . , it does not follow that [defendants] have necessarily provided constitutionally adequate treatment")). Hudgins alleges that he repeatedly informed Dr. Mullins and other medical personnel that Motrin was ineffective and that Dr. Mullins nonetheless "failed to change course." Perry, 728 F. App'x at 182. Hudgins further alleges that Dr. Mullins "never made the effort to see why [he] had not been sent to the orthopedic specialist," even though the doctor determined that an outside orthopedic evaluation was warranted for both his arm and knee issues. 2d Am. Compl. ¶¶ 28, 40. At this stage of the litigation, Hudgins's allegations are "sufficient to plausibly allege the subjective element of a deliberate indifference claim" against Dr. Mullins. Perry, 728 F. App'x at 182; see also Cesal v. Moats, 851 F.3d 714, 723 (7th Cir. 2017) (recognizing that continuing an ineffective treatment plan "may evidence deliberate indifference"); Arnett v. Webster, 658 F.3d 742, 754 (7th Cir. 2011) ("[Plaintiff's] allegations that the medical defendants knowingly ignored his complaints of pain by continuing with a course of treatment that was ineffective and less efficacious without exercising professional judgment are sufficient to state a claim."); Grissom v. Watson, No. 3:21-cv-00274, 2023 WL 2263636, at *5 (S.D. Ill. Feb. 28, 2023) (concluding that a doctor's "decision to continue with ibuprofen and not to pursue additional pain management strategies or orthopedic assistance devices or to refer [the plaintiff] to a specialist may amount to deliberate indifference or objectively unreasonable treatment"); Whitenight v. Elbel, No. 2:16-cv-00646, 2017 WL 6026379, at *21 (W.D. Pa. Dec. 5, 2017)

(noting that it was "plausible that evidence could reveal that [the plaintiff's] medical treatment was delayed for non-medical reasons or that [the medical defendants] continued a course of treatment they knew was . . . ineffective," and, thus, that the plaintiff should be afforded the opportunity to discover evidence indicating that the delay in failing to order an MRI or refer the plaintiff to a specialist constituted deliberate indifference).[2]

Having concluded that the second amended complaint states a viable Eighth Amendment violation against Dr. Mullins, the court must determine "whether the right was clearly established at the time of [the defendant's] alleged misconduct." Pearson, 555 U.S. at 232. To determine whether a right was clearly established, the court "must first define the right at issue." Scinto, 841 F.3d at 235. The court must then determine "whether the law at the time of the challenged conduct was sufficiently clear such that every reasonable official would understand that what he is doing violates that right." Tarashuk, 53 F.4th at 164.

This prong of the qualified immunity analysis is also satisfied under the facts alleged against Dr. Mullins. In Scinto, which involved claims of deliberate indifference in violation of the Eighth Amendment, the Fourth Circuit defined the right at issue as "the right of prisoners to receive adequate medical care and to be free from officials' deliberate indifference to their known medical needs." 841 F.3d at 236. The Fourth Circuit has since reaffirmed that definition

---

[2] The court notes that at this stage of the proceedings, Hudgins's factual allegations, taken has true, render his claims against Dr. Mullins distinguishable from those in Barnes v. Mullins, No. 7:20-cv-00635, 2022 WL 989257, at *7 (W.D. Va. Mar. 31, 2022), another case in which an inmate faulted Dr. Mullins for prescribing Motrin even though the inmate reported that the medication was ineffective. In that case where summary judgment was granted, it was "undisputed" that the inmate had been examined by an orthopedic specialist and that the specialist had specifically informed Dr. Mullins that the inmate did "not need anything else except ibuprofen or Tylenol as need for pain." Id. (internal quotation marks omitted). Moreover, after Motrin proved ineffective, Dr. Mullins prescribed other medications and arranged for the inmate to undergo physical therapy. Id. at *8. Based on the evidence presented in that case, the court concluded that no reasonable jury could find that Dr. Mullins exhibited deliberate indifference to the inmate's serious medical needs. Id.

in at least two published opinions. See Pfaller, 55 F.4th at 451 (rejecting the defendants'
argument that the definition is too general); Tarashuk, 53 F.4th at 164 (declining to "desert its
ruling in Scinto," and holding that the constitutional right in question in a case involving a
pretrial detainee "is appropriately defined as a pretrial detainee's right to adequate medical care
and freedom from deliberate indifference to his serious medical needs").

Based on existing precedent, the court concludes that the right at issue was clearly
established at the time of the challenged conduct. As the Fourth Circuit emphasized in Scinto,
"[a] prisoner's right to adequate medical care and freedom from deliberate indifference to
medical needs has been clearly established by the Supreme Court and [the Fourth] Circuit since
at least 1976 and, thus, was clearly established at the time of the events in question." Scinto,
841 F.3d at 236 (citing Estelle, 429 U.S. at 104–05; Bowring v. Godwin, 551 F.2d 44, 47
(1977)). Moreover, existing precedent gave Dr. Mullins "'fair warning' that providing 'some
treatment does not mean that [he has] provided constitutionally adequate treatment.'"
Tarashuk, 53 F.4th at 166 (emphasis in original) (quoting Heyer v. U.S. Bureau of Prisons, 849
F.3d 202, 211 (4th Cir. 2017)); see also Cooper v. Dyke, 814 F.2d 941 (4th Cir. 1987)
(recognizing that "government officials who ignore indications that a prisoner's or pretrial
detainee's initial medical treatment was inadequate can be liable for deliberate indifference to
medical needs").

For these reasons, the court concludes that Dr. Mullins is not entitled to qualified
immunity at this stage of the proceedings and that Hudgins is entitled to "some discovery"
before the court considers Dr. Mullins's declaration or any other evidence outside the
pleadings. Crawford-El, 523 U.S. at 598. Accordingly, to the extent the defendants move for

summary judgment on the claims against Dr. Mullins, the motion will be denied without prejudice to refiling.

### IV.    Hudgins's Motion for Relief under Rule 56(d) and the Defendants' Motion for a Protective Order Staying Discovery

For the claims that remain pending against Dr. Mullins, the court concludes that Hudgins is entitled to engage in discovery and that relief under Rule 56(d) is appropriate. Although the defendants correctly note that Hudgins did not file an affidavit in support of the motion, his failure to do so is not dispositive of the issue. The Fourth Circuit has held that even in the absence of an affidavit, "a district court abuses its discretion by granting summary judgment when it otherwise has 'fair notice of . . . potential dispute[s] as to the sufficiency of the summary judgment record.'" Shaw v. Foreman, 59 F.4th 121, 128 (4th Cir. 2023) (quoting Pledger v. Lynch, 5 F.4th 511, 526 (4th Cir. 2021)). The Court has emphasized that "[s]uch premature summary judgment is particularly disfavored in the context of pro se litigation and when 'facts bearing on the subjective knowledge' of defendants 'are exclusively in the control of the opposing party.'" Id. (quoting Pledger, 5 F.4th at 526); see also Goodman v. Diggs, 986 F.3d 493, 500 (4th Cir. 2021) (concluding that "summary judgment was premature because outstanding discovery requests existed on material issues").

In accordance with Fourth Circuit precedent, the court concludes that Hudgins's motion for relief under Rule 56(d) is the "functional equivalent" of a Rule 56(d) affidavit and that summary judgment on the claims against Dr. Mullins is premature at this time. Harrods Ltd. v. Sixty Internet Domain Names, 302 F.3d 214, 244 (4th Cir. 2022). Accordingly, Hudgins's motion will be granted in part and denied in part. In addition to denying the defendants' motion for summary judgment without prejudice with respect to the claims against

Dr. Mullins, the court will permit Hudgins to file a "new master discovery motion setting forth all matters he requests to discover" from Dr. Mullins relevant to his claims against the remaining defendant. Goodman, 986 F.3d at 501.

Finally, in light of the court's rulings on the motion for summary judgment and the motion for relief under Rule 56(d), the defendants' motion to stay discovery pending a ruling on the issue of qualified immunity will be denied without prejudice as moot.

Conclusion

For the reasons stated, the defendants' motion for summary judgment, ECF No. 52, is **GRANTED IN PART AND DENIED WITHOUT PREJUDICE IN PART**; Hudgins's motion for relief under Rule 56(d), ECF No. 68, is **GRANTED IN PART AND DENIED IN PART**; and the defendants' motion for a protective order staying discovery pending the resolution of the issue of qualified immunity, ECF No. 54, is **DENIED WITHOUT PREJUDICE** as moot.  An appropriate order will be entered.

Entered: September 29, 2023

Digitally signed by Michael F.
Urbanski      Chief U.S. District
Judge
Date: 2023.09.29 15:05:11 -04'00'

Michael F. Urbanski
Chief United States District Judge