CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

March 31, 2025
LAURA A. AUSTIN, CLERK
BY:
s/A. Beeson
DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ROANOKE DIVISION

| | |
|---|---|
| TARIK HASAN HUDGINS,       ) | |
|     Plaintiff,       ) | Case No. 7:22-cv-00170 |
|           ) | |
| v.          ) | |
|           ) | By: Michael F. Urbanski |
| DR. BENNY MULLINS, MD,     ) | Senior United States District Judge |
|     Defendant.       ) | |

## MEMORANDUM OPINION

Tarik Hasan Hudgins, a Virginia inmate proceeding pro se, filed this civil action under 42 U.S.C. § 1983 against members of the medical staff at Wallens Ridge State Prison (Wallens Ridge), including Dr. Benny Mullins. Hudgins claims that Dr. Mullins violated the Eighth Amendment by failing to provide adequate medical treatment for a knee condition and an arm injury. The case is presently before the court on Dr. Mullins's renewed motion for summary judgment, ECF No. 106, and Hudgins's motion to amend the complaint to include a claim against a new defendant, ECF No. 101. For the reasons set forth below, Dr. Mullins's motion is **GRANTED**, and Hudgins's motion is **DENIED**.

### I.    Factual Background

The following facts from the summary judgment record are either undisputed or presented in the light most favorable to Hudgins. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

Hudgins is in the custody of the Virginia Department of Corrections (VDOC). The events giving rise to this action occurred while Hudgins was incarcerated at Wallens Ridge

from December 2021 until March 1, 2022. During the time period at issue, Dr. Mullins provided medical treatment to inmates at Wallens Ridge.

On December 2, 2021, Dr. Mullins saw Hudgins for complaints of pain and fluid retention in both knees. Verified 2d Am. Compl. (Am. Compl.), ECF No. 48, ¶ 7; Mullins Decl., ECF No. 81-1, ¶ 5. Dr. Mullins ordered x-rays of both knees, knee sleeves, and "generic Motrin" (ibuprofen) for pain.[1] Am. Comp. ¶ 8. He also ordered blood work to determine whether Mullins's complaints were the result of an infection. Id.; see also Mullins Decl. ¶ 5.

Later that same day, a stack of boxes fell on Hudgins's arm while he was working in the kitchen, "causing excruciating pain and a large knot to appear almost immediately." Am. Compl. ¶ 9. On December 3, 2021, Nurse Robin Smith examined Hudgins in the medical unit. Id. ¶ 14. The examination notes indicate that Hudgins complained of worsening arm pain as a result of an incident that occurred while lifting boxes. ECF No. 81-1 at 25.[2] Nurse Smith noted that Hudgins's blood pressure was 168/100 and that the left forearm distal radius had a raised area with redness that was tender to the touch. Id. Although Hudgins was able to move his hand, he complained of pain when doing so. Id. Nurse Smith called Dr. Mullins regarding Hudgins's arm, and Dr. Mullins issued verbal orders for Motrin and a left forearm x-ray. Mullins Decl. ¶ 6. Hudgins alleges that the Motrin did not alleviate the pain. Am. Comp. ¶ 19.

---

[1] Ibuprofen is in a class of medications referred to as "NSAIDs" (nonsteroidal anti-inflammatory drugs). See Ibuprofen, Medline Plus, https://medlineplus.gov/druginfo/meds/a682159.html (last visited Mar. 31, 2025). Prescription ibuprofen is used to relieve pain, tenderness, and swelling. Id.

[2] Hudgins's medical records are docketed as part of ECF Nos. 81-1, 115-2, 122-1, and 123-1. The court will cite to the medical records using the docket number and pagination assigned by the CM/ECF system.

Left forearm x-rays were performed on December 4, 2021. Id. ¶ 21. The x-rays revealed a "1.5 cm corticated ossific fragment at the posterior olecranon and minimal to mild soft tissue swelling at the posterior elbow." Mullins Decl. ¶ 7. The interpreting physician noted that the ossific fragment "likely represented a chronic (i.e., old) fracture of the posterior olecranon" but that "a subacute fracture could not be completely excluded." Id. The physician also noted that the radius and ulna were "otherwise unremarkable." Id.; see also ECF No. 115-2 at 4.

On December 5, 2021, Hudgins had blood drawn as ordered by Dr. Mullins. Mullins Decl. ¶ 8. The tests were normal and showed that Hudgins was not currently suffering from an infection. Id.

On December 8, 2021, Dr. Mullins informed Hudgins in writing that his recent x-rays would require "further testing/monitoring" and that he was scheduled to see the doctor. ECF No. 81-1 at 31. That same day, Hudgins complained of a "hand/wrist injury" during sick call and informed the nurse that a box had fallen on his hand. Id. at 22. The nurse noted that there was a "slight edematous area" on Hudgins's left wrist but that there was "no redness" or "pain with palpation." Id. The nurse also noted that Hudgins's skin was intact and that his range of motion was within normal limits. Id. At that time, Hudgins was already scheduled to see Dr. Mullins for a follow-up appointment. Id.

On December 9, 2021, Hudgins underwent x-rays of both knees. The x-ray of the right knee was unremarkable. Mullins Decl. ¶ 10; see also ECF No. 81-1 at 27 ("Impression: No acute fracture or dislocation."). The x-ray of the left knee revealed "mild tricompartmental osteoarthritic changes" but "no acute facture or dislocation." ECF No. 81-1 at 28. Additionally, the x-ray showed "no suprapatellar effusion." Id. Consequently, "aspiration was

not indicated." Mullins Decl. ¶ 10.  On December 13, 2021, Dr. Mullins informed Hudgins in writing that his x-rays revealed a condition that would require further testing or monitoring and that he was scheduled to see Dr. Mullins. ECF No. 81-1 at 26.

Dr. Mullins saw Hudgins in the medical unit on December 15, 2021, and reviewed the x-ray results with him. Mullins Decl. ¶ 12; see also ECF No. 81-1 at 21. His vital signs at that appointment included a blood pressure reading of 154/90. ECF No. 81-1 at 21. Dr. Mullins ordered knee sleeves again and recommended that Hudgins be housed on the bottom tier with a bottom bunk. Mullins Decl. ¶ 12; Am. Comp. ¶ 27. Dr. Mullins also ordered an orthopedics referral for Hudgins's knee and elbow issues. Mullins Decl. ¶ 12. Nursing staff noted that the orthopedics referral and the order for a knee sleeve were communicated to the medical secretary. Id.; see also ECF No. 81-1 at 21 (noting "to sec" by each order). According to Dr. Mullins, the medical secretary is responsible for preparing an outside referral consultation request before an inmate can leave the correctional facility for treatment. Mullins Decl. ¶ 12. Dr. Mullins acknowledges that "it does not appear from [Hudgins's] chart that one was ever prepared" before Hudgins left Wallens Ridge. Id.

From December 17, 2021, through December 23, 2021, nurses saw Hudgins at his cell at least once per day. ECF No. 81-1 at 19–21. The nurses noted that Hudgins was not in any distress, that he declined to have his vital signs checked, and that he voiced no complaints. Id.

Hudgins's ibuprofen prescription expired on January 1, 2022. See ECF No. 81-2 at 1. On January 6, 2022, Hudgins "signed up for sick call due to extreme pain in his left arm." Am. Compl. ¶ 32. Hudgins told the nursing staff that "the Motrin was not reducing the pain." Id.

A nurse noted that Hudgins had been placed on the list to see a physician. ECF No. 81-1 at 18.

On January 12, 2022, Dr. Mullins reviewed Hudgins's chart. Mullins Decl. ¶ 16; ECF No. 81-1 at 18. The following day, a nurse entered an order from Dr. Mullins requesting renewal of Hudgins's prescription for Lisinopril, a medication used to treat high blood pressure.[3] ECF No. 81-17.

On January 14, 2022, Hudgins received the knee sleeves ordered by Dr. Mullins. Am. Compl. ¶ 33.

On January 18, 2022, Hudgins presented to Dr. Mullins for a chronic care visit related to his hypertension. Mullins Decl. ¶ 18. During the visit, Hudgins complained of ongoing leg pain. Am. Comp. ¶ 34. A physical examination revealed no edema in Hudgins's extremities. Mullins Decl. ¶ 18; ECF No. 81-1 at 15. Prior to the appointment, correctional staff had asked Dr. Mullins to determine if any inmates currently assigned to a bottom tier could be medically cleared due to a shortage of bottom tier beds. Mullins Decl. ¶ 18. Dr. Mullins determined that Hudgins could be medically cleared from bottom tier housing and made a notation to that effect on the treatment form. Id.; ECF No. 81-1 at 15. Dr. Mullins made no change to the bottom bunk order. Mullins Decl. ¶ 18.

On January 20, 2022, Hudgins presented to Dr. Mullins with complaints of ongoing pain in his left arm. Am. Compl. ¶ 36. Dr. Mullins noted no new objective observations during

---

[3] See Lisinopril, MedlinePlus, https://medlineplus.gov/druginfo/meds/a692051.html (last visited Mar. 31, 2025) ("Lisinopril is used alone or in combination with other medications to treat high blood pressure in adults and children 6 years of age and older.").

the examination. Mullins Decl. ¶ 19; ECF No. 81-1 at 14. Although Hudgins reported that Motrin had not effectively treated his pain, Dr. Mullins renewed the Motrin prescription. Am. Compl. ¶ 36; see also ECF No. 81-2 at 1 (indicating that a new prescription for ibuprofen became effective on January 20, 2022).

On February 15, 2022, Hudgins submitted an offender request to the Assistant Warden inquiring about the status of the orthopedic referral ordered by Dr. Mullins. ECF No. 115-1 at 13. The Assistant Warden responded that an appointment with a specialist "may take a few weeks [since] it is based on the specialist [having] an opening." Id.

From February 15, 2022, through February 17, 2022, medical staff saw Hudgins at least once per day. ECF No. 81-1 at 13. The treatment notes indicate that Hudgins voiced no complaints during that time and that he was not in any acute distress. Id.

On February 21, 2022, Hudgins presented to sick call with complaints of pain in his left hand and arm. ECF No. 81-1 at 12. The examining nurse noted that there was no "swelling or obvious deformity." Id. The nurse gave Hudgins Tylenol and referred him to Dr. Mullins. Id.

Hudgins saw Dr. Mullins again on February 28, 2022. Dr. Mullins noted that Hudgins complained of an injury to his left arm that he sustained in the kitchen. ECF No. 81-1 at 10. Dr. Mullins noted that there were no objective findings of any injury other than a scar. Id. He renewed Hudgins's Motrin prescription for another 90 days. Id.; see also Mullins Decl. ¶ 22.

On March 1, 2022, the VDOC transferred Mullins to Keen Mountain Correctional Center (Keen Mountain). ECF No. 81-1 at 8–9. A post-transfer medical review indicates that that Hudgins had no physical limitations and no signs or symptoms of abuse or trauma. Id.

On March 2, 2022, a nurse practitioner at Keen Mountain entered an order for Advil to be taken as needed for 90 days.[4]  ECF No. 122-1 at 4. The following day, Hudgins requested a "bottom bunk/tier renewal." Id. A nurse noted that Hudgins had a steady gait, that he exhibited no signs of distress, and that he denied experiencing any recent injury. Id.

On March 8, 2022, Hudgins saw a nurse practitioner regarding his housing requests. Id. The nurse practitioner noted that Hudgins complained about his right knee and left wrist. Id. She ordered knee sleeves and a bottom bunk for Hudgins. Id.

Hudgins saw the nurse practitioner again on March 21, 2022, for complaints of bilateral knee pain and left forearm pain. Id. at 6. The nurse practitioner noted that an "orthopedic consult was written and approved at [Hudgins's] previous facility" and that Hudgins would be referred to a local orthopedic specialist for his knee and left forearm pain. Id.

On April 15, 2022, Hudgins saw an orthopedic specialist at Appalachian Orthopedics. Id. at 8. The specialist noted that Hudgins only asked for his right knee to be examined, that the knee examination was normal, and that x-rays of the right knee and left forearm were "negative for acute bony changes." Id. The specialist gave Hudgins a corticosteroid injection in his right knee and recommended that he apply ice to his knee and left wrist. Id.

Hudgins returned for a follow-up appointment on May 24, 2022. Id. at 9. At that time, the orthopedic specialist ordered an MRI of the right knee and recommended that Hudgins avoid running and jumping. Id.

---

[4] Advil is another brand of ibuprofen. See n. 4, supra.

On July 27, 2022, Hudgins underwent a right knee MRI at Clinch Valley Medical Center. Id. at 11. The MRI suggested that there was a "subtle tear involving the posterior horn of the medical meniscus." ECF No. 123-1 at 18.

On September 29, 2022, Hudgins complained of left forearm pain and knee pain. ECF No. 122-1 at 12. A nurse noted that Hudgins had been prescribed Motrin and naproxen, that he had not picked up his prescription for Motrin since May, and that he had not picked up his prescription for naproxen since August. Id. The nurse also noted that Hudgins had been scheduled for a follow-up appointment with the orthopedic specialist. Id.

On December 2, 2022, the orthopedic specialist recommended knee surgery. Id. at 15. Hudgins underwent a "right knee arthroscopy with partial medial meniscectomy and medial femoral condyle chondroplasty" on December 15, 2022. Id. at 16–18.

Hudgins returned for a follow-up appointment at Appalachian Orthopedics on January 30, 2023. Id. at 24. An orthopedic specialist recommended that Hudgins take NSAIDs as needed for his right knee and for pain and swelling in his left forearm. Id.

In February 2023, Hudgins continued to complain of left forearm pain. Id. at 23. A forearm x-ray performed that same month was normal. Id. at 26. Likewise, an August 2023 ultrasound revealed no abnormalities in Hudgins's left forearm. Id. at 35.

## II.    Procedural History

Hudgins initially filed this action under 42 U.S.C. § 1983 on March 24, 2022, shortly after being transferred to Keen Mountain. On November 2, 2022, Hudgins filed the operative amended complaint against Dr. Mullins and two nurses. Hudgins claims that Dr. Mullins violated the Eighth Amendment by failing to provide adequate medical treatment for his "knee

injury" and his "arm injury." Am. Compl. ¶¶ 51–52. More specifically, Hudgins alleges that the failure to treat his "knee injury without more than Motrin and knee sleeves, or to ensure he was seen by a specialist who could treat him, constituted cruel and unusual punishment in violation of the Eighth Amendment." Id. Hudgins further alleges that the failure to treat his "arm injury, except with Motrin, constituted cruel and unusual punishment." Id. Hudgins asserts that he "repeated[ly]" complained about Motrin's "ineffectiveness at treating the severe pain" and that he "suffered extreme and unnecessary pain for months." Id. ¶¶ 39, 47.

In response to the operative amended complaint, the defendants filed a motion for summary judgment in which they raised the defense of qualified immunity. They simultaneously moved for a protective order staying discovery pending a decision on their motion for summary judgment. In response to the defendants' motions, Hudgins argued that the motion for summary judgment was premature and that the court should deny the motion and permit him to engage in discovery pursuant to Federal Rule of Civil Procedure 56(d). On September 29, 2023, the court granted in part and denied without prejudice in part the defendants' motion for summary judgment, granted in part Hudgins's motion for relief under Rule 56(d), and denied as moot the defendants' motion for a protective order. See Mem. Op., ECF No. 74, at 21; Order, ECF No. 75, at 1–2. Relying solely on the allegations in the operative amended complaint, the court dismissed the claims against the nurses for failure to state a claim but concluded that Hudgins had stated a plausible claim against Dr. Mullins. Mem. Op., ECF No. 74, at 15–19. The court further concluded that Hudgins was "entitled to 'some discovery' before the court consider[ed] Dr. Mullins's declaration or any other evidence outside the pleadings." Id. at 19 (quoting Crawford-El v. Britton, 523 U.S. 574, 598 (1998)).

9

The court directed Hudgins to file a "new master discovery motion" setting forth the matters he requested to discover from Dr. Mullins and gave Dr. Mullins 75 days to file a renewed motion for summary judgment. Order, ECF No. 75, at 2.

Hudgins subsequently filed a document styled as "Plaintiff's Master Discovery Requests." ECF No. 77. The requests consisted of requests for admission, interrogatories, and requests for production of documents, including "Hudgins's medical files from 12-2-21 to the present date." Id. at 1–4.

On December 13, 2023, Dr. Mullins filed a renewed motion for summary judgment. ECF No. 80. In response, Hudgins argued that summary judgment remained premature because Dr. Mullins had not responded to all of his discovery requests, including his request for production of medical records. See ECF Nos. 87, 92. The court subsequently denied Dr. Mullins's motion for summary judgment without prejudice to refiling pursuant to Rule 56(d). See Mem. Op. and Order, ECF No. 104, at 7–10. The court directed Dr. Mullins to respond to certain outstanding discovery requests, including the request for production of medical records, within 21 days. Id. Dr. Mullins subsequently responded to the discovery requests and provided a copy of the medical records that were in his possession, custody, or control. See ECF Nos. 105, 111.

On November 14, 2024, Dr. Mullins filed the renewed motion for summary judgment that is presently before the court. ECF No. 106. That motion has been fully briefed by the parties and is ripe for review. Additionally, Hudgins has moved for leave to amend the complaint to add "Jane Doe (medical secretary)" as a defendant. ECF No. 101. Hudgins alleges that the medical secretary violated the Eighth Amendment by "fail[ing] . . . to carry out

10

treatment for [his] arm and knee injuries" that had been ordered by Dr. Mullins. ECF No. 101-1 at 8.

### III.    Standards of Review

Under Rule 56 of the Federal Rules of Civil Procedure, the court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" Libertarian Party of Va. v. Judd, 718 F.3d 308, 313 (4th Cir. 2013) (quoting Dulaney v. Packaging Corp. of Am., 673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" Id. (quoting Henry v. Purnell, 652 F.3d 524, 548 (4th Cir. 2011)).

When ruling on a motion for summary judgment, the court must "view the facts and all justifiable inferences arising therefrom in the light most favorable to the nonmoving party." Id. at 312. "To defeat a properly filed motion for summary judgment, the nonmoving party must set forth specific facts that go beyond the 'mere existence of a scintilla of evidence.'" Muchira v. Al-Rawaf, 850 F.3d 605, 616 (4th Cir. 2017) (quoting Anderson, 477 U.S. at 252). "Conclusory allegations and speculation will not suffice." Id. Instead, "there must be evidence on which the jury could reasonably find for the [nonmovant]." Anderson, 477 U.S. at 252.

A plaintiff may only amend a complaint "once as a matter of course" within the time limits set forth in Rule 15, and after that time period lapses, a party may amend his complaint "only with the opposing party's written consent or the court's leave." Fed. R. Civ. 15(a)(2); see also Galustian v. Peter, 591 F.3d 724, 730 (4th Cir. 2010) (noting that Rule 15(a) applies to amendments seeking to add parties). Although district courts "should freely give leave [to

amend] when justice so requires," Fed. R. Civ. P. 15(a)(2), leave to amend should "be denied when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile," ACA Fin. Guar. Corp. v. City of Buena Vista, 917 F.3d 206, 217–18 (4th Cir. 2019) (internal quotation marks omitted). "A proposed amendment is futile when it is clearly insufficient or frivolous on its face . . . [or] if the claim it presents would not survive a motion to dismiss." Save Our Sound OBX, Inc. v. N.C. Dep't of Transp., 914 F.3d 213, 228 (4th Cir. 2019) (internal quotation marks and citations omitted).

## IV.    Discussion

### A.    Dr. Mullins's Renewed Motion for Summary Judgment

Hudgins claims that Dr. Mullins violated his rights under the Eighth Amendment by failing to provide adequate medical treatment for his knee and arm conditions while he was incarcerated at Wallens Ridge. "The Eighth Amendment, which is applicable to the States through the Fourteenth Amendment, prohibits the infliction of 'cruel and unusual punishments.'" Anderson v. Kingsley, 877 F.3d 539, 543 (4th Cir. 2017) (quoting U.S. Const. amend. VIII). "Under the Eighth Amendment, prisoners have the right to receive adequate medical care while incarcerated." DePaola v. Clarke, 884 F.3d 481, 486 (4th Cir. 2018). An Eighth Amendment violation occurs when a prison official "demonstrates 'deliberate indifference' to an inmate's serious medical needs." Id.

A claim of deliberate indifference has "two components, objective and subjective." Jackson v. Lightsey, 775 F.3d 170, 178 (4th Cir. 2014). The plaintiff must show that he had serious medical needs (the objective component) and that a defendant acted with deliberate

indifference to those needs (the subjective component). Hixson v. Moran, 1 F.4th 297, 302 (4th Cir. 2021). "The objective component of a deliberate indifference claim is satisfied by a serious medical condition." Gordon v. Schilling, 937 F.3d 348, 356 (4th Cir. 2019). A condition is serious "when it has 'been diagnosed by a physician as mandating treatment or is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" Id. (quoting Scinto v. Stansberry, 841 F.3d 219, 225 (4th Cir. 2016)).

"The subjective component requires showing that the defendant had actual subjective knowledge of both the plaintiff's serious medical condition and the excessive risk posed by the official's action or inaction." Phoenix v. Amonette, 95 F.4th 852, 859 (4th Cir. 2024) (internal quotation marks and brackets omitted). "An official is deliberately indifferent to an inmate's serious medical needs only when he or she subjectively 'knows of and disregards and excessive risk to inmate health or safety.'" Jackson, 775 F.3d at 178 (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)). "That is a higher standard for culpability than mere negligence or even civil recklessness, and as a consequence, many acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference." Id. To establish an Eighth Amendment violation, "it is not enough that an official should have known of a risk; he or she must have had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." Id.

The mere fact that an inmate received "some treatment" for a condition does not necessarily mean that the inmate received "constitutionally adequate treatment." De'Lonta v. Johnson, 708 F.3d 520, 526 (4th Cir. 2013). However, mere disagreements between an inmate and a prison physician over an inmate's proper medical care "fall short of showing deliberate

indifference." <u>Jackson</u>, 775 F.3d at 178; <u>see also</u> <u>Phoenix</u>, 95 F.4th at 859 (emphasizing that such disagreements "do not cut it"). Likewise, "in the Eighth Amendment context, questions of medical judgment are generally 'not subject to judicial review.'" <u>Griffin v. Mortier</u>, 837 F. App'x 166, 171 (4th Cir. 2020) (quoting <u>Russell v. Sheffer</u>, 528 F.2d 318 319 (4th Cir. 1975)). To find a physician liable, "the treatment given must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." <u>Hixson</u>, 1 F.4th at 303 (internal quotation marks omitted).

Applying these principles, and after reviewing the record in the light most favorable to Hudgins, the court concludes that Dr. Mullins is entitled to summary judgment. There is insufficient evidence from which a reasonable juror could find that Dr. Mullins actually knew of and disregarded an excessive risk to Hudgins's health or safety, or provided medical care that was so grossly inadequate or incompetent as to shock the conscience.

### 1. Hudgins's Knee Condition

Turning first to Hudgins's knee condition, it is undisputed that once he voiced complaints of pain and swelling on December 2, 2021, Dr. Mullins immediately ordered Motrin (ibuprofen) for pain, knee sleeves, x-rays, and blood work to rule out an infection. The x-rays revealed only mild osteoarthritic changes in the left knee and no effusion in either knee. After reviewing the x-ray results with Hudgins, Dr. Mullins ordered knee sleeves again, which Hudgins received a few weeks later. He also recommended that Hudgins be assigned to a bottom bunk and ordered an orthopedics referral for further assessment. Hudgins remained on ibuprofen until January 1, 2022, and Dr. Mullins renewed the prescription on January 20, 2022. Although Hudgins complained of ongoing leg pain during a chronic care visit related to

his hypertension on January 18, 2022, the medical records reflect no further complaints of knee pain or swelling during the relatively short period of time in which Hudgins was housed at Wallens Ridge. On this record, no reasonable jury could find that Dr. Mullins ignored Hudgins's complaints of knee pain and swelling or provided grossly inadequate treatment for his knee issues. To the extent Hudgins disagrees with the treatment decisions made by Dr. Mullins, "such disagreements . . . fall short of showing deliberate indifference." Jackson, 775 F.3d at 178.

In response to the motion for summary judgment, Hudgins argues that deliberate indifference can be inferred from the fact that he was not actually referred to an orthopedic specialist before being transferred to Keen Mountain on March 1, 2022. See Pl.'s Resp. Mot. Summ. J., ECF No. 115, at 7 (asserting that Dr. Mullins should have ensured that the referral order was carried out). However, there is no evidence that the failure to complete the referral paperwork was deliberate or that Dr. Mullins even knew that the consultation request had not been prepared by the medical secretary before Hudgins left Wallens Ridge. At most, the evidence suggests that Dr. Mullins acted negligently in failing to recognize from his review of the medical chart that an orthopedics referral request had not been completed. "While the intentional failure to schedule an appointment with a medical specialist may amount to deliberate indifference when it causes substantial harm, the negligent failure to schedule an appointment does not." Cannon v. Dehner, 112 F.4th 580, 589–90 (8th Cir. 2024) (quoting Thomas v. Carter, 593 F. App'x 338, 344 (5th Cir. 2014)); see also McKnight v. Garriott, No. 3:15-cv-00159, 2018 WL 6019706, at *28 (M.D. Fla. Nov. 16, 2018) ("Plaintiff has not shown that Defendant Diaz acted with deliberate indifference to a serious medical need. To the extent

15

. . . there was a negligent failure to schedule an appointment after Defendant Diaz directed that one be scheduled, this mistake or negligent action alone is not sufficient to bring a constitutional claim of deliberate indifference."). As explained above, deliberate indifference is "a very high standard," and "a showing of mere negligence will not meet it." <u>Ford v. Hooks</u>, 108 F.4th 224, 230 (4th Cir. 2024) (quoting <u>Parrish ex rel. Lee v. Cleveland</u>, 372 F.3d 294, 302 (4th Cir. 2004)).

To the extent Hudgins faults Dr. Mullins for continuing to prescribe ibuprofen for pain, no reasonable jury could find from the evidence of record that this particular treatment decision reflected deliberate indifference. In his sworn response in opposition, Hudgins asserts that he "complained of continued pain and ineffective medication on at least five instances" between December 15, 2021, and February 28, 2022. Pl.'s Resp. Mot. Summ. J. 5. As other courts have recognized, however, a healthcare provider "must make treatment decisions on the basis of many factors, only one of which is the patient's input." <u>Cannon</u>, 112 F.4th at 587 (quoting <u>Allard v. Baldwin</u>, 779 F.3d 768, 772 (8th Cir. 2015)). This is true even in the context of pain management. <u>See</u> <u>Norwood v. Ghosh</u>, 723 F. App'x 357, 365 (7th Cir. 2018) (noting that "treating pain allows considerable room for professional judgment"). Here, the record establishes that Hudgins first saw Dr. Mullins for his knee-related complaints on December 2, 2021, and that he was transferred approximately twelve weeks later. During the intervening period, Dr. Mullins ordered x-rays that revealed only mild osteoarthritic changes in one knee, and he ordered ibuprofen and knee sleeves.[5] Dr. Mullins submitted a declaration explaining

---

[5] The court recognizes that Hudgins waited more than a month to receive the knee sleeves ordered by Dr. Mullins. <u>See</u> Pl.'s Resp. Summ. J. at 8 (emphasizing that the knee sleeves "took a month and twelve days to be received"). However, there is no evidence that the delay was attributable to any deliberate action or omission

that conservative treatment does not always work immediately and that "[o]nly after conservative treatment fails are more aggressive treatment options usually considered." Mullins Supp'l Decl., ECF No. 91-1, ¶ 6. As was true in <u>Norwood</u>, there is no evidentiary basis for a reasonable jury to find that the failure to treat Hudgins's pain "more aggressively" during the twelve-week treatment period amounted to deliberate indifference.[6] 723 F. App'x at 365. As noted above, Hudgins's own disagreement with the chosen course of treatment is insufficient to satisfy the subjective component. <u>Phoenix</u>, 95 F.4th at 89. "This is true even if the conservative treatment did not ultimately relieve his symptoms." <u>Grayer v. Geo Corporate Office Grp., Inc.</u>, 602 F. App'x 213, 214 (5th Cir. 2015).

Finally, the fact that Hudgins underwent surgery in December 2022 for a medial meniscus tear in his right knee does not raise an inference of deliberate indifference on the part of Dr. Mullins. Hudgins was not diagnosed with a meniscal tear until he underwent an MRI on July 27, 2022, nearly five months after he was transferred to Keen Mountain. There is no evidence that Dr. Mullins or any other medical provider had prior knowledge of that

---

on the part of Dr. Mullins or any other staff member, and the delay in and of itself is not sufficient to support a finding of deliberate indifference in this case. See <u>Moskos v. Hardee</u>, 24 F.4th 289, 297 (4th Cir. 2022) ("[T]o state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. Not all medical delays, of course, will meet this standard.") (internal quotation marks omitted); <u>Easter v. Powell</u>, 467 F.3d 459, 463 (5th Cir. 2006) ("The mere delay of medical care can also constitute an Eighth Amendment violation but <u>only</u> if there has been deliberate indifference that results in substantial harm.") (emphasis added) (internal quotation marks and brackets omitted).

[6] Hudgins asserts that his higher blood pressure readings in December 2021 confirm that he was experiencing "excruciating pain" at that time. Pl.'s Resp. Mot. Summ. J. at 12; <u>see also</u> Pl.'s 2d Resp. Mot. Summ. J., ECF No. 123, at 6. The medical records establish that Dr. Mullins simultaneously treated Hudgins for hypertension. To the extent Hudgins suggests that Dr. Mullins misjudged the severity of his pain, his argument sounds in negligence, not deliberate indifference. See <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976) ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.").

particular injury. Dr. Mullins maintains that he was not aware of a medial meniscus tear at any time prior to Hudgins's transfer from Wallens Ridge on March 1, 2022, and Hudgins's right knee was found to be "normal" when an orthopedic specialist initially examined him on April 15, 2022. Mullins Supp'l Decl. ¶ 4; see also ECF No. 122-1 at 8. Even if hindsight suggests that an MRI should have been ordered sooner, the record does not support a finding of deliberate indifference. See Parrish, 372 F.3d at 309 ("As we often have made clear, the question in deliberate indifference cases is not whether the officials could have taken additional precautions—almost invariably, with the benefit of 20/20 hindsight, there are additional precautions that could have been taken—but whether they 'disregarded an excessive risk to . . . . health or safety.'") (citing Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999) (rejecting as "impermissible 20/20 hindsight" the contention that officers should have taken a detainee to a medical facility)); Schaub v. VonWald, 638 F.3d 905, 915 (8th Cir. 2011) ("Deliberate indifference must be measured by the official's knowledge at the time in question, not by hindsight's perfect vision.") (internal quotation marks omitted); see also Galindo v. Altenberg, 552 F. App'x 355, 56 (5th Cir. 2014) (noting that even if the plaintiff "had submitted medical expert reports showing that the defendants violated the community standard of care by failing to obtain an MRI, negligence, medical malpractice, and disagreements with diagnostic measures are insufficient to give rise to a claim of deliberate indifference").

For these reasons, the court concludes that Dr. Mullins is entitled to summary judgment on the claim that he provided constitutionally inadequate treatment for Hudgins's knee issues.

## 2.     Hudgins's Arm Condition

Hudgins has also failed to put forth sufficient evidence to survive summary judgment on his claim that Dr. Mullins provided inadequate medical treatment for the arm injury that Hudgins suffered on December 2, 2021. The record establishes that when Nurse Smith informed Dr. Mullins of Hudgins's complaints related to his arm on December 3, 2021, Dr. Mullins directed Nurse Smith to provide ibuprofen and order x-rays. The x-rays revealed what appeared to be a 1.5 centimeter chronic or old elbow fracture and related swelling. Although Hudgins had specifically complained about a raised area and tenderness near the distal radius, the x-rays revealed that the radius and ulna were unremarkable. After reviewing the x-rays, Dr. Mullins recommended that Hudgins be assigned to a bottom bunk and ordered the orthopedics referral. The record reflects that Hudgins periodically complained of ongoing pain in his left hand and arm in January and February 2022 and that Dr. Mullins continued to prescribe ibuprofen for pain relief.

For the same reasons discussed above, the fact that Hudgins was not actually seen by an orthopedic specialist until after he was transferred to Keen Mountain does not support a reasonable inference of deliberate indifference on the part of Dr. Mullins. Nor does the fact that Hudgins reported that ibuprofen was ineffective. When Dr. Mullins renewed the ibuprofen prescription on January 20, 2022, he specifically noted that there were no new objective observations during the examination. Likewise, with the exception of a scar, Dr. Mullins observed no objective findings of any arm injury when he renewed the ibuprofen prescription on February 28, 2022. Hudgins's dissatisfaction with the results of the prescribed medication is insufficient to establish that the course of treatment was constitutionally

inadequate. See Rogers v. Boatright, 709 F.3d 403, 410 (5th Cir. 2013) ("Unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances.") (internal quotation marks omitted); see also Norwood, 723 F. App'x at 365 ("Medical professionals cannot guarantee pain-free lives for their patients."). Indeed, the same course of treatment—NSAIDs as needed for pain and swelling—was recommended by an orthopedic specialist in January 2023, and additional medical imaging revealed no abnormalities in Hudgins's left arm. On this record, no reasonable juror could find that Dr. Mullins knew of and disregarded an excessive risk to Hudgins's health or safety or provided treatment that was so grossly incompetent or inadequate as to permit a finding of deliberate indifference. Accordingly, the court will grant Dr. Mullins's renewed motion for summary judgment.

**B.    Hudgins's Motion to Amend**

Hudgins has moved for leave to amend the operative complaint to add Jane Doe, an unidentified medical secretary, as a defendant. Relying on one of the declarations signed by Dr. Mullins, Hudgins alleges that medical staff "noted that the orthopedic referral and the order for a knee sleeve were communicated to the medical secretary" on December 15, 2022. Proposed 3d Am. Compl., ECF No. 101-1, at 4 (internal quotation marks omitted) (citing Mullins Decl., ECF No. 81-1). He alleges that "[i]t is the responsibility of the medical secretary to prepare an outside referral consultation request before an inmate can leave the facility for treatment" and that "it does not appear from [his] chart that one was ever prepared." Id. (internal quotation marks omitted). Hudgins also asserts that he did not receive the knee sleeve

ordered by Dr. Mullins until January 14, 2022. Id. at 7. Hudgins claims that "[t]he failure of 'Jane Doe' (medical secretary) to carry out treatment" ordered by Dr. Mullins "constituted cruel and usual punishment in violation of the Eighth Amendment." Id. at 8.

Having reviewed the proposed amended complaint and other relevant documents, the court concludes that Hudgins's motion must be denied. "Although Rule 15(a) indicates that leave to amend shall be freely granted, a party must act with due diligence if it intends to take advantage of the Rule's liberality." United States v. Midwest Suspension & Brake, 49 F.3d 1197, 1202 (6th Cir. 1995). The Supreme Court has "previously explained that a court may consider a movant's 'undue delay' . . . in deciding whether to grant leave to amend under Rule 15(a)." Krupski v. Costa Crociere S.p.A., 560 U.S. 538, 553 (2010) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)). Likewise, appellate courts have recognized that delay "can be a sufficient reason for denial of leave when accompanied by futility or prejudice to the non-movant." HealthSouth Rehab. Hosp. v. Am. Nat'l Red Cross, 101 F.3d 1005, 1010 (4th Cir. 1996); see also Morse v. McWhorter, 290 F.3d 795, 800 (6th Cir. 2002) ("Ordinarily, delay alone, does not justify denial of leave to amend. At some point, however, delay will become undue, placing an unwarranted burden on the court, or will become prejudicial, placing an unfair burden on the opposing party.") (internal quotation marks and citations omitted).

This case has been pending for three years, and Hudgins has already filed two amended complaints. The declaration on which he relies in seeking to add a claim against the unknown medical secretary was signed on August 3, 2022, and initially filed in the case on August 5, 2022, nearly three months before Hudgins filed his second amended complaint. Even after Dr. Mullins resubmitted the declaration in support of a renewed motion for summary

judgment, Hudgins waited more than nine months to file the pending motion, and he has not provided any justifiable basis for the delay.

Additionally, the proposed amendments would be futile. Hudgins does not plausibly allege that the delay in receiving the prescribed knee sleeves resulted from any deliberate action or omission on the part of the medical secretary. Nor does he set forth facts from which the court could reasonably infer that the medical secretary intentionally failed to complete the paperwork necessary for Hudgins to see an outside orthopedic specialist or "consciously disregarded a substantial risk of serious harm." Cartagena v. Lovell, 103 F.4th 171, 182 (4th Cir. 2024) (emphasis added) (internal quotation marks and brackets omitted); see also Jackson, 775 F.3d at 178 (emphasizing that deliberate indifference requires that the prison official have "actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction"); Formica v. Aylor, 739 F. App'x 745, 754 (4th Cir. 2018) (noting that the "necessary showing of deliberate indifference can be manifested by prison officials in responding to a prisoner's medical needs in various ways, including intentionally denying or delaying medical care, or intentionally interfering with prescribed medical care) (emphasis added and omitted). At most, the allegations in the proposed amended complaint suggest that the medical secretary negligently failed to process the orthopedics referral. "Although the intentional failure to schedule an appointment with a specialist may amount to deliberate indifference when it causes substantial harm, the negligent failure to schedule an appointment does not." Blank v. Bell, 634 F. App'x 445, 448 (5th Cir. 2016). Consequently, the court concludes that allowing Hudgins to amend the complaint a third time to add the medical secretary as a defendant would be futile.

## V.     Conclusion

For the reasons stated, Dr. Mullins's renewed motion for summary judgment, ECF No.

106, is **GRANTED**, and Hudgins's motion to amend, ECF No. 101, is **DENIED**.

An appropriate order will be entered.

Entered: March 31, 2025

Michael F. Urbanski
U.S. District Judge
2025.03.31 15:19:17
-04'00'

Michael F. Urbanski
Senior United States District Judge